

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT MARTINSBURG**

| IN RE: | CASE NO. 3:25-bk-00009 |
|---|---|
| DARRYL EDMOND PALMER, | CHAPTER 13 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

**MEMORANDUM OPINION AND ORDER GRANTING THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS WITH PREJUDICE, AND BARRING DEBTOR FROM REFILING FOR FIVE YEARS**

Pending before the Court is the Chapter 13 Trustee's *Motion to Dismiss Case for Failure to File a Confirmable Plan and Lack of Good Faith and Motion to Condition Dismissal to Impose Bar to Refiling* [dkt. 200] (the "Motion"), joined by the West Virginia State Tax Department ("WVSTD") [dkt. 204], and the Debtor's response filed thereto [dkt. 241]. The Court held a hearing on the aforementioned matters on July 11, 2025, at 11:00 a.m. (the "July 11 Hearing").

The Chapter 13 Trustee ("Trustee") contends that Mr. Palmer's (the "Debtor") case should be dismissed because he failed to timely file a confirmable plan which resulted in unreasonable delays that were prejudicial to his creditors pursuant to 11 U.S.C. § 1307(c)(1), (3), and (5). Furthermore, the Trustee asserts that the Debtor acted in bad faith, providing additional grounds for dismissal under 11 U.S.C. § 1307(c) and warranting a bar to refiling for five (5) years pursuant to 11 U.S.C. § 349(a). The Debtor's response is largely incoherent, shifting from claims

of "ambush" by the Trustee and the WVSTD to assertions that his pending appeals prohibit a ruling on the Motion.  All briefing having been completed, this matter is ripe for adjudication.

Upon consideration of the parties' filings, arguments, and the relevant case law, the Court concludes that the Debtor acted in bad faith, failed to file a confirmable plan, and intentionally engaged in conduct that not only caused unreasonable delay to creditors in violation of 11 U.S.C. § 1307(c), but also demonstrated a blatant dereliction of his duties as a debtor, a disregard for bankruptcy law and procedure, and an abuse of the bankruptcy process.  For the reasons set forth herein, the Motion is granted with a bar to refiling for a period of five (5) years, and the case shall be dismissed and removed from the Court's active docket.  The Court takes no pleasure in granting such extraordinary relief; however, this relief is essential to curtail the Debtor's ongoing efforts to undermine, exploit, erode, and abuse the bankruptcy process, thus threatening its integrity, frustrating its purpose, and exhausting judicial resources to the detriment of his creditors and other parties in interest.

## I.

The Court is vested with subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The Court has authority to consider and resolve the issues raised under 28 U.S.C. § 157(b)(1).

The Debtor has an extensive filing history in this district characterized by repeated procedural deficiencies and unsuccessful attempts to reorganize.  The Debtor has filed nine (9) petitions in this district (including the present case) and one (1) petition in the Eastern District of Virginia for a total of ten (10) cases.  Out of the ten cases, the Debtor was awarded a discharge in only two.  These cases were filed over the span of almost thirty-three (33) years between July 27,

1992, to January 10, 2025.  The following chart summarizes the Debtor's prior filings, the grounds

for dismissal, and identifies the two instances in which a discharge was granted.

| | Case Name and Number | Date Filed | Date Dismissed | Reasons for Dismissal | Date of Discharge |
|---|---|---|---|---|---|
| 1 | Darryl Edmond Palmer  1:92-bk-13626  (E.D.Va.) | 07/27/1992 | N/A | N/A | 11/18/1992 |
| 2 | Darryl Edmond Palmer and Tamara Jean Palmer  3:95-bk-31130 | 10/04/1995 | 11/20/1998 | Voluntary Dismissal – 11 U.S.C. § 1307(b) | N/A |
| 3 | Darryl Edmond Palmer and Tamara Jean Palmer  3:99-bk-30530 | 03/05/1999 | 04/30/2002 | Failure to Maintain Plan Payments – 11 U.S.C. § 1307(c)(4) | N/A |
| 4 | Darryl Edmond Palmer  3:06-bk-00278 | 04/07/2006 | 07/31/2006 | Voluntary Dismissal – 11 U.S.C. § 1307(b) | N/A |
| 5 | Darryl Edmond Palmer  3:09-bk-01476 | 06/30/2009 | 08/15/2011 | Voluntary Dismissal – 11 U.S.C. § 707(a) | N/A |
| 6 | Darryl E. Palmer  3:13-bk-00421 | 03/30/2013 | 08/08/2014 *Case was reopened on 05/01/2015 and terminated on 07/21/2015 | Failure to Maintain Plan Payments – 11 U.S.C. § 1307(c)(4) | N/A |
| 7 | Darryl Edmond Palmer  3:14-bk-01019 | 09/17/2014 | 12/22/2014 | Failure to File Information – 11 U.S.C. § 521(a) | N/A |
| 8 | Darryl Edmond Palmer  3:16-bk-00077 | 02/09/2016 | 10/18/2016 | Failure to Provide Necessary Financial Information – Fed. R. Bankr. P. 4002 | N/A |
| 9 | Darryl Edmond Palmer  3:17-bk-00006 | 01/04/2017 | N/A | N/A | 10/04/2021 |

### A. FIRST FILING

The Debtor filed a Chapter 7 petition on July 27, 1992, in the Eastern District of Virginia.  He was represented by counsel, Charles B. Sullivan, Jr.  A discharge was entered on November 18, 1992.

### B. SECOND FILING

Approximately three years later, the Debtor filed a Chapter 13 petition with his spouse, Tamara Jean Palmer, on October 4, 1995.  The Debtors were represented by counsel, James T. Kratovil.  On November 20, 1998, the Debtors filed a motion to voluntarily dismiss their case; it was granted the same day.  *See* Case No. 3:95-bk-31130, dkts. 47, 49.  The case was closed on December 7, 1998.

### C. THIRD FILING

Less than three months after the prior case was closed, the Debtor filed a Chapter 13 petition with his spouse, Tamara Jean Palmer, on March 5, 1999.  The Debtors were represented by counsel, James T. Kratovil.  On April 2, 2002, the Trustee moved to dismiss the case for failure to maintain plan payments, which was granted.  *See* Case No. 3:99-bk-30530, dkts. 92, 94.  The case was closed on April 30, 2002.

### D. FOURTH FILING

Nearly four years later, the Debtor filed a Chapter 13 petition on April 7, 2006.  The Debtor was represented by counsel, Aaron C. Amore.  The Trustee moved to dismiss the case for failure to maintain plan payments on July 10, 2006, with the deficiency in plan payments having reached $9,297.00.  *See* Case No. 3:06-bk-00278, dkt. 59.  Two weeks later, the Debtor requested a voluntary dismissal of his case.  *Id*. at dkt. 81.  The case was dismissed on July 31, 2006, and subsequently closed on September 5, 2006.

4

### E.  FIFTH FILING

On June 30, 2009, the Debtor filed a Chapter 11 petition.  At the outset of the case,
Debtor represented himself *pro se*.  The Debtor filed five claim objections against the Internal
Revenue Service ("IRS"), WVSTD, Oak First Loan Center, Bethany Cole and Barbara Cockerille,
Stephen Skinner, and the Bureau for Child Support Enforcement.  *See* Case No. 3:09-bk-01476,
dkts. 58, 64, 103, 115.  The Debtor asserted various grounds ranging from allegations that the IRS
was "pulling numbers out of their head and submitting a claim," to violations of the Truth in
Lending Act by Oak First Loan Center.  Case No. 3:09-bk-01476, dkts. 58.  None of the objections
cited any provision of Title 11 of the United States Code (the "Bankruptcy Code") or provided any
further support for the relief requested.  Some of the objections were summarized in a three-
paragraph filing.  *Id*. at dkt. 58.

Subsequently, the Debtor moved to appoint an examiner to "investigat[e] the role
the IRS is playing in this case along with Stephen Skinner that represents Bethany Cole and
Barbara Cockerille, and the Board of Child Support Enforcement," and requested help as the "IRS
expects me to file a false tax return."  *Id*. at dkt. 70.  The IRS moved to dismiss the case, arguing
that the Debtor failed to file valid tax returns for 2005, 2007, and 2008.  Although the Debtor
reported no income for those years, the IRS maintained 1099 forms indicating the Debtor received
$500,000.00 in income in 2005.  *Id*. at dkt. 114.  In response, the Debtor argued that the "so-called
taxman vanished with my papers," that there was "no proof of a security interest," and
contemplated whether there was "a conspiracy theory here or what."  *Id*. at dkt. 138.  Furthermore,
the Debtor filed a motion for injunctive relief, claiming it was improper for the United States
Attorney's Office to represent the IRS without specifying why the situation was improper.  *Id*. at

dkt. 139. The motion for injunctive relief was denied. *Id.* at 147. Thereafter, the Debtor secured counsel, Brian J. McAuliffe. The case was converted twice—first to Chapter 13 and later to Chapter 7. The Debtor filed a motion to voluntarily dismiss his case on July 20, 2011. The case was dismissed and closed on August 15, 2011.

## F. SIXTH FILING

Over a year and a half later, the Debtor filed a Chapter 13 petition on March 30, 2013. The Debtor was initially represented by counsel, Brian J. McAuliffe, but later elected to proceed *pro se*. On January 31, 2014, the Debtor submitted correspondence to the Court expressing that, although he was represented by counsel, there were certain matters he wished to address directly. Case No. 3:13-bk-00421, dkt. 85. One was the lawsuit filed by Christine Smith against the Debtor's wholly-owned entity, Matt's Auto World Pre-Owned Cars, LLC ("Matt's Auto World") on January 17, 2014.[1] Simultaneously, the Debtor filed an adversary proceeding alleging that the initiation of the suit violated his automatic stay and should be removed to the Bankruptcy Court. *See* Case No. 3:14-ap-00003, dkt. 1. Neither of these filings cited any provisions of the Bankruptcy Code nor did they include any legal basis for why the action should be removed or how the automatic stay extended to a non-debtor. On February 4, 2014, the Court ordered the adversary proceeding remanded to state court, finding that it involved no claims arising under the Bankruptcy Code and was unrelated to the Debtor's personal bankruptcy, as he was not a defendant in the underlying civil action. *Id.* at dkt. 2.

---

[1] Ms. Christine Smith was represented by Stephen G. Skinner and Skinner Law Firm in a previous state action before the Circuit Court of Berkeley County (Civil Action No. 02-2014-C-19) and in the adversary proceeding. *See* Case No. 3:14-ap-00003. Another state action was commenced by plaintiff, Ms. Sandy Woodward, on February 10, 2014, before the Circuit Court of Jefferson County against Matt's Auto World. (Civil Action No: 19-2014-C-52). Mr. Skinner also represented Ms. Woodward.

Thereafter, the Court granted dismissal in the main bankruptcy case on August 8, 2014, for failure to maintain plan payments.  Case No. 3:13-bk-00421, dkt. 127.  The Debtor moved to reopen his case arguing that he received the notice of dismissal several months later and should be granted relief on that basis.  Additionally, the Debtor informed the Court that he received a child support bill and wondered "how many times will I have to pay the child support before the [C]ourt does sanctions against Helen Morris [Chapter 13 Trustee]."  *Id*. at dkt. 148.  The Debtor filed several motions for an accounting statement from the Trustee and for violations of the automatic stay which the Court denied.  *Id.* at dkts. 156, 157, 167, and 171.  In response, the Trustee advised that she may seek sanctions against the Debtor if he continued to file further baseless pleadings in the case regarding the Trustee's administration of the estate.  *Id*. at dkt. 158. The case was closed on July 21, 2015.

## G. SEVENTH FILING

Prior to the previous case closing in July 2015, the Debtor filed another Chapter 13 petition on September 17, 2014, in which he attempted to re-litigate issues already decided in his sixth bankruptcy proceeding.  In this seventh proceeding, the Debtor again represented himself *pro se*.  He expressed his intention to "add" his entity, Matt's Auto World, to his bankruptcy case and reiterated that the suits against Matt's Auto World violated the automatic stay in his individual case.  *See* Case No. 3:14-bk-01019, dkt. 30.  At the time of this request, Matt's Auto World was engaged in ongoing litigation with Ms. Smith and Ms. Woodward in state court.  Once again, the Court denied relief because Matt's Auto World is a separate entity from the Debtor, and its assets and liabilities cannot be part of his individual bankruptcy case.  *Id*. at dkt. 43.  The Debtor proceeded to move for sanctions against both the Bureau for Child Support Enforcement and the Berkeley County Public Service Water District; none of the filings cited any basis for relief or

provisions of the Bankruptcy Code. *Id*. at dkts. 44, 46. The Debtor filed claim objections against the IRS, Potomac Edison, and BB&T; these filings, too, failed to cite any basis for why these objections should have been granted. *Id*. at dkts. 62, 64, 66.

The Trustee subsequently moved to dismiss the case for failure to file required documents. In support of her motion, the Trustee cited the following deficiencies: (1) the Debtor failed to identify the collateral securing the debt listed in Schedule D; (2) Schedules I and J were incomplete, preventing the Trustee from assessing the Debtor's income and expenses; (3) the Trustee believed information regarding assets, income, and other business activities were withheld; and (4) the Debtor filed an incomplete plan, omitting pages without explanation. *Id*. at dkt. 59. The motion was granted, and the case was dismissed on December 22, 2014 and closed on July 2, 2015.

## H.  EIGHTH FILING

Seven months later, on February 9, 2016, the Debtor filed a Chapter 13 petition and represented himself *pro se*. At the outset, the Debtor filed a total of eight (8) claim objections (only nine (9) claims were filed in the case). One of the objections was sustained; the rest were overruled because the Debtor failed to specify a basis for disallowance, failed to provide evidence to rebut the prima facie validity of the proof of claim, or the claimholder amended the claim. Case No. 3:16-bk-00077, dkts. 108, 109, 123, 201, 220, 223, 224, 228. The Debtor's plan proposed to pay a total of $12,000.00 over the life of a 24-month plan, broken up into monthly payments of $500.00. *Id*. at dkt. 13. The Trustee promptly objected to the plan. The objection contended, among other grounds, that the plan was not feasible and had been proposed in bad faith, no financial information was provided, and the Debtor failed to commit all of his disposable income (calculated to be $660.00 monthly) to plan payments. *Id*. at dkt. 39.

On August 26, 2016, the Trustee moved to dismiss the case due to the Debtor's failure to provide necessary financial information and cooperate with the Trustee. *Id*. at dkt. 211. The Trustee cited multiple incidents where a request was made for financial information and the Debtor refused, resulting in a delay in administering the case. For instance, he refused to provide his bank statements and business reports, or correct inaccuracies in his Schedules and Statement of Financial Affairs. He omitted information as to his sources of income and provided incomplete records of his financial information—for example, withholding a 2015 tax return which reflected gross income from two of his entities of $109,044.00 and $113,538.00. Additionally, the Debtor testified that his expenses were being paid by multiple LLCs as "fringe benefits." *Id*. The Court dismissed the case on October 18, 2016. The Debtor moved for reconsideration of that decision, expressing that "this is [an] ambush from the very beginning since I have come to the court for help over the years to try to resolve problems with creditors," and that the Chapter 13 Trustee "appear to make every bankruptcy case that I have filed a clear case of descremination [sic]." *Id*. at dkt. 255. The Court denied the motion to reconsider as the Debtor failed to state a basis under Rule 60(b) of the Federal Rules of Civil Procedure. *Id*. at dkt. 256. The case was closed on January 17, 2017.

## I.   NINTH FILING

Prior to the closure of the previous case, the Debtor filed a *pro se* Chapter 13 petition on January 4, 2017. The Debtor proposed to pay $10,800.00 total over the life of a 36-month plan. He indicated several times in the plan that "no secured claims are to be paid," as shown below.

9

**Adequate Protection Payments.** Unless otherwise ordered, if a secured creditor is being paid through the Trustee, then an Section 1326(a)(1) adequate protection payments shall be made through the Trustee in the amount set forth in this Proposed Plan. The Trustee is not obligated to make any pre-confirmation adequate protection payments to a secured creditor until that creditor files a proof of claim. *NO ADEQUATE PROTECTION PAYMENT ARE TO BE PAID*

**3.1 Direct Payments Made by the Debtor on Secured Debts.** The Debtor is not in arrears on the secured debts listed below and will directly maintain the current contractual installment payments, with any change required by the applicable contract that is noticed in conformity with any applicable rule.

Total Paid Out of Plan Base

| Part 3: | Treatment of Secured Claims |

**Secured Claims.** Each holder of an allowed secured claim, which is paid in full during the life of the plan and for which the collateral is not surrendered, shall retain the lien securing the claim until the earlier of: (1) payment of the underlying debt as determined under non-bankruptcy law; or (2) discharge. Should this case be dismissed or converted before the plan is completed, the lien securing an allowed secured claim shall be retained by the holder to the extent recognized by non-bankruptcy law.

*THERE ARE NO SECURED PLAN PAYMENTS ALLOWED TO BE PAID AT AUTO ANY CREDITORS*

Case No. 3:17-bk-00006, dkt. 14. The Trustee objected to the plan because it was indecipherable, did not commit the Debtor's full disposable income to plan payments, the Debtor refused to provide complete information regarding his various companies, and the Trustee had reason to believe that the Debtor may be sheltering undisclosed assets in the LLCs. *Id*. at dkt. 125.

On March 29, 2017, Ms. Smith and Ms. Woodward filed an adversary proceeding against the Debtor for nondischargeability of debt obtained by false pretenses under 11 U.S.C. § 523(a) and denial of discharge associated with claims relating to the state actions against Matt's Auto World. Case No. 3:17-ap-00011, dkt. 1. On May 1, 2017, the Debtor filed a motion for sanctions against Ms. Smith and her counsel, Skinner Law Firm; the motion did not cite to a legal basis for this relief. *Id*. at dkt. 13. Subsequently, the Debtor filed a succession of motions to disbar and sanction Mr. Skinner, add Matt's Auto World to his personal bankruptcy, and to enjoin the plaintiffs' state court actions against Matt's Auto World. *Id*. at dkts. 56, 74, 79, 83. The Court noted the Debtor's vexatious conduct in its denial of the motions to enjoin the state actions and add Matt's Auto World to the Chapter 13 bankruptcy, stating that the "Debtor seemingly seeks to

add [Matt's Auto World] as part of this case simply to stop litigation against it." *Id*. at dkt. 91.

The Court also denied the motion to sanction Mr. Skinner. *Id*. at dkt. 94.

      In the main bankruptcy case, Debtor filed additional motions for sanctions against

Berkeley County Public Service Sewer District, Weatherholtz, Skinner Law Firm and Stephen

Skinner, which the Court denied due to insufficient evidence in support of his motions. Case No.

3:17-bk-00006, dkts. 293, 294, and 318. On October 4, 2021, the Court entered an order

discharging the Debtor. Following the discharge, the Debtor filed a "*Notice of Trustee Helen*

*Morris Not Doing Her Job*," in which he claimed that the Trustee's performance was

unsatisfactory. *Id*. at dkt. 404. The case was closed on October 21, 2022.

## J. TENTH AND CURRENT FILING

      On January 10, 2025, the Debtor filed the current Chapter 13 petition. Within the

910 days prior to this bankruptcy filing, he purchased the following five vehicles:

| Year, Make, and Model | Date | Creditor |
|---|---|---|
| 2023 Chevrolet Silverado | September 23, 2022 | AmeriCredit Financial Services, Inc. d/b/a GM Financial [Claim No. 4-1] |
| 2023 Chevrolet Silverado | December 15, 2022 | Ally Bank [Claim No. 7-1] |
| 2023 Toyota Tacoma 4WD | January 26, 2024 | Toyota Motor Credit Corporation [Claim No. 10-1] |
| 2025 Honda CR-V Hybrid | July 8, 2024 | American Honda Finance Corporation [Claim No. 2-2] |
| 2025 Honda Odyssey | August 14, 2024 | American Honda Finance Corporation [Claim No. 3-1] |

*See* Case No. 3:25-bk-00009, Proof of Claim Nos. 2, 3, 4, 7, and 10. On Debtor's Schedule A/B,

the Debtor states that he has an interest in the following companies: Palmer Land Development,

LLC; Tire Shop and More, LLC; Fast and Friendly, LLC; Darryl Palmer Preowned Cars; Fix-It

Anytime, LLC; and Matt's Auto World, LLC.  *Id.,* dkt. 1 at 32.  On the Debtor's Statement of Financial Affairs, he indicates that his gross income from operating a business from January 1 of the current year until the date he filed for bankruptcy was $406,334.00.  *Id*. at 10.  According to Schedule I, the Debtor is self-employed in the auto repair industry and has a monthly net income of $20,875.35, and lives in a household of one.  *Id*. at 55-59.

The proofs of claim filed in the case total $456,727.45.  Of that amount, $232,364.22 is filed as secured and $81,596.89 filed as priority.  The Debtor inexplicably proposed to pay $0.00 towards his plan and noted that "there are no secured plan payments allowed to be paid at all to any creditors."  *Id.* at dkt. 6.  The Debtor later amended his plan ("First Amended Plan") to provide $0.00 in plan payments and to increase the plan base to $30,000.00 to benefit only one of his six secured creditors.  *Id*. at dkt. 36.

On Schedule C, the Debtor claims a total of $286,940.00 in exemptions for his real property and five vehicles, citing to 11 U.S.C. § 522(b)(3).  *Id*. at 35-36.  The Trustee objected to the Debtor's exemptions.  In response, the Debtor asserted that the property exemptions are "through" Palmer Land Ownership, LLC.  Importantly, the Debtor does not cite any legal basis, provision of the Bankruptcy Code, or other mechanism that would support property exemptions in his personal bankruptcy case via Palmer Land Ownership, LLC.  Accordingly, the Court sustained the Trustee's objection.  *Id*. at dkts. 37, 90.  The Debtor appealed the decision.  *See* Case No. 3:25-cv-00076-GMG.

Thereafter, the Debtor filed a notice of fraud and objection to WVSTD's claim alleging that the WVSTD committed fraud and absconded with funds belonging to him.  Case No. 3:25-bk-00009, dkt. 51.  At a hearing held on April 23, 2025 (the "April 23 Hearing"), the Debtor claimed that because he has already paid the WVSTD's claim in a prior bankruptcy, the WVSTD

12

must have committed fraudulent conduct.  When asked why he would accuse Mr. Wilson, counsel for the WVSTD, and Ms. Rutledge, an employee of the WVSTD, of personally pocketing tax payments intended for the WVSTD, the Debtor stated it was "because [of] the exhibits that they signed."  *See* Tr. at 21:8-13.  The Debtor did not provide proof of these allegations, and stated at the April 23 Hearing "well, I don't know where the money went, Your Honor," and "somebody got the money."  *See* Tr. 21:20-25.  The Court struck his notice, finding it contained inflammatory accusations of fraud against public officials without supporting evidence and cautioned the Debtor regarding his obligations under Rule 9011(b) of the Federal Rules of Bankruptcy Procedure.  Case No. 3:25-bk-00009, dkt. 105.  The Debtor appealed that decision.  *See* Case No. 3:25-cv-00075-GMG.

Additionally, the Debtor refuses to provide bank statements from one of his entities, Tire Shop and More, LLC, despite the Trustee's explanation that the request is necessary for the purpose of determining his disposable income.  *See* Tr. 37:5-8.  The Court issued an order compelling turnover of the bank statements, which the Debtor subsequently appealed.  Case No. 3:25-bk-00009, dkt. 104; Case No. 3:25-cv-00077-GMG.  Then, the Debtor proceeded to file objections to ten out of the twenty-three claims filed in this case, which were all overruled.  Case No. 3:25-bk-00009, dkts. 105, 222-228, 261-62.

On May 23, 2025, the Debtor filed another amended plan ("Second Amended Plan") following the Court's order affording him an opportunity to amend his plan to provide for full payment of the five creditors holding "910 claims," secured by his vehicles.[2]  11 U.S.C. §

---

[2] The term '910' claims or '910' claimholders will be used throughout this Memorandum Opinion and Order.  A 910 claim arises under the hanging paragraph in 11 U.S.C. § 1325(a) which provides,

For purposes of paragraph (5) [of § 1325(a)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the

1325(a)(5); Case No. 3:25-bk-00009, dkts. 106, 160. The Second Amended Plan proposes $3,000.00 in monthly plan payments over the life of a 60-month plan for a plan base of $180,000.00. The Second Amended Plan does not conform with the model Chapter 13 plan set forth by this district. N.D.W. Va. LBR 3015-1(a). Notably, the Debtor lists two unexpired leases he seeks to assume but indicates that neither creditor will be paid pursuant to those leases. He also states that he does not intend to pay thirteen out of the twenty-three creditors who filed proofs of claim, asserting that their claims should be avoided through lien avoidance. The Debtor provides no legal basis or provisions of the Bankruptcy Code to support lien avoidance.

| Name of creditor | Description of leased property or executory contract | Current installment payment | Amount of arrearage to be paid | Treatment of arrearage (Refer to other plan section if applicable) | Estimated total payments by trustee |
|---|---|---|---|---|---|
| SMART PAY RENTALS | SHED / BUILDING | $ 800. Disbursed by: ☐ Trustee ☐ Debtor(s) | $ 0 | 0 | $ 0 |
| HEARTLAND CAPITAL INVESTMENTS | SHED / BUILDING | $ 800 Disbursed by: ☐ Trustee ☐ Debtor(s) | $ 0 | 0 | $ 0 |

Insert additional contracts or leases as needed.

NONE OF THESE 2 ARE TO BE PAID

---

910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor[.]

In other words, a '910' claim is one secured by a purchase money security interest in a motor vehicle incurred within 910 days of the petition date. That claim cannot be crammed down to the vehicle's current value; the debtor must pay the full amount of the claim. The Court cannot approve a plan with a cramdown of a 910 vehicle.

3-4.
LIEN AVOIDENOR²
NONE OF THESE CREDITORS ARE TO BE PAID
CLAIM 5   WV TAX OFFICE          15,445.63
CLAIM 9   MERRICK BANK            1,905.93
CLAIM 11  AMERICAN EXPRESS        4,845.18
CLAIM 12  POTOMAC EDISON          4,952.55
CLAIM 13  FRONTIER                   88.58
CLAIM 14  TIME PAYMENT            1903.22
CLAIM 16  FINANCIAL PACFIC       55,020.52
CLAIM 17  LVNV FUNDING              401.26
CLAIM 18  SQURE                  10,316.44
CLAIM 19  RESURGENT RECEIVABLES 342.20
CLAIM 20  VERIZON                 1,654.75
CLAIM 21  WORKFORCE                 737.16
CLAIM 22  TBF                    11,601.29

                              109,212.80

Case No. 3:25-bk-00009, dkt. 160.

Pursuant to an order of the Court, the Debtor filed a list of his LLCs so that the parties in the case could determine the extent of the Debtor's engagement in business and any attendant tax liabilities. Included in the list were the following entities: Darryl Palmer Preowned Cars, LLC; 24 Hour Roadside Service and Towing, LLC; Fast and Friendly Auto Repair and Towing Service, LLC; Tire Shop and More, LLC; and Darryl Palmer Trucking. *Id.* at dkt. 185. In comparing this list with the Debtor's Schedule A/B, there are clear discrepancies. Schedule A/B does not show an interest in 24 Hour Roadside Service and Towing, LLC and Darryl Palmer Trucking. *Id.*, dkt. 1 at 32. The list of LLCs does not include Fix-It Anytime, LLC, Matt's Auto World, or Palmer Land Development, LLC.[3]

---

[3] The Court takes judicial notice that the Office of the West Virginia Secretary of State shows the following active LLCs as the Debtor's entities: 24 Hour Roadside Service and Towing, LLC; Darryl Palmer Preowned Cars, LLC; Fast and Friendly Auto Repair and Towing Service, LLC; Fix-It Anytime Road Services, LLC; Matt's Auto World; Palmer Land Ownership, LLC; and Tire Shop and More, LLC. *See* Fed. R. Evid. 201; s*ee also In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008).

No. 3:25-bk-00009   Doc 282   Filed 10/20/25   Entered 10/20/25 16:30:35   Page 16 of 35


At the July 11 Hearing, despite the above-listed discrepancies, the Debtor asserted that he did disclose the full extent of his businesses on Schedule A/B. *See* Tr. 17:7-14. He complained that the "[WVSTD] and the trustees gang up against me, and [are] making things very difficult, trying to get this confirmation." *See* Tr. 4:17-19.

In an attempt to move the case towards confirmation, and based on his evaluation of the Debtor's expenses and disposable income, the Trustee presented the Debtor with a proposed Chapter 13 plan that would pay 100% to his unsecured creditors.[4] However, the Debtor took issue with paying his unsecured creditors in full and instead argued, without any legal basis, that a 7 or 8% recovery would be more appropriate. *See* Tr. 12:12-18; Tr. 26:1-3. When referring to creditor Heartland Capital Investments, LLC, and the collateral securing its lease, the Debtor stated that the creditor could "stick it where the sun doesn't shine." *See* Tr. 16:11-14. When asked about his newly-purchased vehicles, the Debtor stated that he purchased the 2025 Honda Odyssey and 2025 Honda CR-V for personal use less than six months prior to filing the petition. *See* Tr. 21:5-22; *see also* Tr. 22:1-10. According to the Debtor, the other vehicles are used for his businesses. When the Court inquired about the timing of the five vehicle purchases listed *supra* and the interplay with the timing of his bankruptcy petition, the Debtor explained that the financial difficulties leading to his bankruptcy filing began only a month before the filing. *See* Tr. 23:7-11. The Court asked, "Is there a reason that you bought two vehicles that you need for your personal use? How do you drive two vehicles at once?" Tr. 21:18-22. The Debtor responded that he lost one car during a previous case and that he was able to buy another vehicle after his credit improved. Then he traded another vehicle for the 2025 Honda Odyssey. His response did not address the questions

---

[4] The Trustee did not recommend confirmation of the plan where it proposed to pay less than 100% of allowed claims. *See* Case No. 3:25-bk-00009, dkt. 183.

16

of why he needs two vehicles for personal use and whether he is indeed able to drive two vehicles at once (which would certainly be a notable feat).  Tr. 21:23-25; Tr. 22:1-6.

In further support of his Motion to Dismiss, the Trustee explains that he is having difficulty accurately analyzing the Debtor's disposable income because the Debtor will not cooperate with requests to provide bank statements.  *See* Tr. 27:23-25.  The Trustee examined the 2023 tax returns which showed that the Debtor's businesses earned around $406,000.00 that year, equating to roughly $38,000.00 in potential monthly income for the Debtor, whereas the schedules reflected only $25,000.00 in monthly income.  *See* Tr. 28:1-8.

The Court granted the Motion to Dismiss and imposed a five-year bar on refiling. Case No. 3:25-bk-00009, dkt. 248.  Since the July 11 Hearing, the Debtor has filed an appeal from the dismissal order along with a statement outlining his reasoning for pursuing the appeal.  He states that he was trying to put the case back on track, but the "Trustee and State of West Virginia (State) wants [sic] to gang bang me by filing [a] Joint Motion to dismiss my case." *Id.* at dkt. 266. He contends that there was corruption afoot in his prior bankruptcy case in addition to "the same corruption that the State is doing now, along with the Trustee this time." *Id*.  He believes that the case is not on track because the "US Trustee Office along with the staff attorney has not gotten involved in this case or is this some sort of conspiracy thing toward [p]ro [s]e people." *Id*.  The Court highlights these portions of the appeal filings not in support of its ruling on the Motion to Dismiss, but to elucidate the Debtor's pattern of nonsensical and hyperbolic filings.

II.

**A. Governing Standard**

Sections 1307(c)(1) and (5) of the Bankruptcy Code provide in relevant part:

**(c)** Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter [11 USCS §§ 1301 *et seq.*] to a case under chapter 7 of this title [11 USCS §§ 701 *et seq.*], or may dismiss a case under this chapter [11 USCS §§ 1301 *et seq.*], whichever is in the best interests of creditors and the estate, for cause, including—
**(1)** unreasonable delay by the debtor that is prejudicial to creditors;
. . .
**(5)** denial of confirmation of a plan under section 1325 of this title [11 USCS § 1325] and denial of a request made for additional time for filing another plan or a modification of a plan . . .

11 U.S.C. § 1307(c)(1), (5).  The party requesting dismissal bears the burden of proof.  *In re Ballentine*, 605 B.R. 710, 714 (Bankr. M.D.N.C. 2019).  The Court must determine whether there is: (1) cause for dismissal or conversion, and (2) whether dismissal or conversion is in the best interests of creditors and the estate.  11 U.S.C. § 1307(c).

While 11 U.S.C. § 1307(c)(1) does not contain a specific amount of time that may be considered "unreasonable delay that is prejudicial to creditors," courts evaluating this Code section have found that "cause" exists when a debtor has filed "numerous plans that cannot be confirmed . . . especially when it appears that a confirmable plan would not be feasible."  8 COLLIER ON BANKRUPTCY ¶ 1307.04 [1] (16th ed. 2025); *see In re Brown*, 671 B.R. 461, 470 (Bankr. D. Md. 2025).  Courts have also held that the "unreasonable delay" requirement is satisfied where a debtor failed to timely file their tax returns, failed to disclose ownership of assets on schedules, or failed to provide the Trustee with necessary documentation.  *See Zulli v. MacCo*, No. 23-cv-01920-JMA, 2024 U.S. Dist. LEXIS 18879, at *8, 2024 WL 406552, at *4 (E.D.N.Y. Feb. 2, 2024) (affirming the bankruptcy court's dismissal order pursuant to 11 U.S.C. § 1307(c)(1)

18

when the appellant failed to timely provide necessary documentation to the Trustee thus hindering the Trustee's ability to administer the Chapter 13 case); *In re Burgos*, 476 B.R. 107, 111 (Bankr. S.D.N.Y. 2012) (finding that failure to file tax returns and financial information constitutes unreasonable delay); *In re Blaise*, 219 B.R. 946, 951 (B.A.P. 2d Cir. 1998) (affirming the bankruptcy court's dismissal order when the debtor failed to disclose ownership of assets on schedules).

In determining cause under 11 U.S.C. § 1307(c)(5), the debtor should be afforded at least one opportunity to file a modified plan. *In re Thomason*, 642 B.R. 8, 20 (Bankr. D. Idaho 2022) ("[Section 1307(c)(5)] does not require the Court to provide unlimited amendments[.]"); *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 676 (B.A.P. 9th Cir. 2006) ("[Section] 1307(c)(5) requires, at a minimum, that the court must afford a debtor an opportunity to propose a new or modified plan following the denial of plan confirmation."). 8 COLLIER ON BANKRUPTCY ¶ 1307.04 [5] (16th ed. 2025). However, the opportunity to modify a plan after denial of confirmation is not a right and a debtor must request that relief from the court. *In re Kinsale*, 617 B.R. 58, 69 (Bankr. D.S.C. 2020). If a debtor engages in several unsuccessful attempts and is unable to propose a confirmable plan, there is cause to dismiss the case. *See In re Kemmerlin*, 659 B.R. 741, 749 (Bankr. D.S.C. 2024) (finding cause to dismiss when the debtor filed four unconfirmable plans); *In re Famisaran*, 224 B.R. 886, 898 (Bankr. N.D. Ill. 1998) (dismissing the case under Section 1307(c)(5) when the debtor filed an original and three amended plans); *In re Mazzone*, No. 23-11167, 2025 Bankr. LEXIS 1847, at *15, 2025 WL 2200551, at *6 (Bankr. N.D.N.Y. Aug. 1, 2025) (dismissing the case when the debtor filed four unconfirmable plans).

Section 1307(c) lists eight other examples of cause for dismissal or conversion, but the list is non-exhaustive. *In re Kelly*, 656 B.R. 541, 591 (Bankr. D. Md. 2023). While bad faith

19

is not included in the enumerated causes, courts have recognized that bad faith constitutes cause for dismissal. *See Marrama v. Citizens Bank*, 549 U.S. 365, 373 (2007) ("Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'"); *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 148 (4th Cir. 1996) ("Reasons constituting 'cause' for dismissal include enumerated ones, such as unreasonable and prejudicial delay by the debtor or material default by the debtor, 11 U.S.C. § 1307(c)(1),(6), as well as judicially construed ones such as bad faith."); *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (finding that a good faith filing requirement is implicit throughout the Bankruptcy Code).

Determining whether a Chapter 13 petition was filed in bad faith requires an analysis of the factors articulated by the United States Court of Appeals for the Fourth Circuit in *In re Love*, 957 F.2d 1350 (7th Cir. 1992). *See Kestell*, 99 F.3d at 148; *In re Uzaldin*, 418 B.R. 166, 174 (Bankr. E.D. Va. 2009); *In re Niemiec*, 662 B.R. 239, 248 (Bankr. D.S.C. 2024); *In re Bland*, No. 06-1159, 2008 Bankr. LEXIS 1331, at *6-7, 2008 WL 2002647, at *3 (Bankr. N.D.W. Va. May 6, 2008). Courts evaluate the following factors and look to the totality of the circumstances in each case:

(1)     the nature of the debt including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding;
(2)     the timing of the petition;
(3)     how the debt arose;
(4)     the debtor's motive in filing the petition;
(5)     how the debtor's actions affected creditors;
(6)     the debtor's treatment of creditors both before and after the petition was filed; and
(7)     whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Love*, 957 F.2d at 1357; *Niemiec*, 662 B.R. at 248.  In some instances, the Fourth Circuit has also considered the percentage of repayment proposed to unsecured creditors, the debtor's financial situation, the debtor's prior bankruptcy filings, and any unusual or exceptional problems facing a particular debtor.  *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982).

While multiple filings in bankruptcy are not *per se* prohibited, a debtor's pattern of repeated filings and dismissals may constitute evidence of bad faith.  *Palsata Tr. v. Fitzgerald*, Civil Action No. 1:21-cv-376 (RDA/IDD), 2022 U.S. Dist. LEXIS 61090, at *10, 2022 WL 981939, at *4 (E.D. Va. Mar. 30, 2022); *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 332 (2d Cir. 1999) ("Serial filings are a badge of bad faith, as are petitions filed to forestall creditors.").  Repeated behavior "strengthens the inference that the conduct was deliberate, and the court will infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process."  *In re Wilcoxon*, No. 18-62228-rk, 2018 Bankr. LEXIS 3616, at *7 (Bankr. N.D. Ohio Nov. 15, 2018) (citing *In re Nelkovski*, 46 B.R. 542, 544 (Bankr. N.D. Ill. 1985)).

Additionally, Sections 1325(a)(3) and (7) require that both the petition and the plan be filed in good faith.  *See* 11 U.S.C. § 1325(a)(3), (7).  The remedy for a bad faith filing is dismissal pursuant to 11 U.S.C. §§ 105(a), 109(g)(1), 349(a).  According to § 109(g)(1), the court may issue a 180-day bar to refiling if "the case was dismissed by the court for willful failure of the debtor to abide by orders of the court."  11 U.S.C. § 109(g)(1).

Ordinarily, dismissal of a bankruptcy case is without prejudice and does not preclude the debtor from filing a subsequent case.  However, § 349(a) "empowers bankruptcy courts to enjoin future filings if cause exists to do so[.]"  *In re Steiner*, 668 B.R. 222, 265-66 (Bankr. W.D. Mo. 2025).  Section 349(a) provides:

> **(a)** Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). This authority is further supported by 11 U.S.C. § 105(a) which empowers a court to take "*any"* action necessary to carry out the provisions of the Bankruptcy Code, particularly where the action is required to prevent further abuses to the bankruptcy process. *See* 11 U.S.C. § 105(a) (emphasis added); s*ee also Kestell*, 99 F.3d at 148. In such cases, courts have imposed lengthier bars to refiling for cause. *See Wilcoxon*, 2018 Bankr. LEXIS 3616 at *9-10 (finding that a five-year bar was appropriate when the debtor was a serial filer who failed to pay filing fees or complete his other duties); *In re Parson*, 632 B.R. 613, 630 (Bankr. N.D. Tex. 2021) (finding that a three-year bar was appropriate where the debtor filed deficient schedules, ignored the Trustee's pleas for critical documents and failed to comply with the provisions of the Bankruptcy Code); *In re Via*, No. 3:19-bk-33999-SHB, 2020 Bankr. LEXIS 536, at *14, 2020 WL 1015264, at *5 (Bankr. E.D. Tenn. Feb. 27, 2020) (finding that a five-year bar is appropriate considering the debtor's long history of filings and dismissals for failures to comply with the requirements of the Bankruptcy Code); *In re Purdy*, No. 19-04614-5-DMW, 2023 Bankr. LEXIS 1020, at *15, 2023 WL 2938052, at *6 (Bankr. E.D.N.C. Apr. 13, 2023) (bans of five years and ten years were warranted when the debtors created a fictitious letter complete with a letterhead from the Trustee's office combined with willful failure to comply with court orders).

## III.

The Court considers one of its most important responsibilities to be safeguarding the bankruptcy process from abuse and upholding its overarching purpose: offering a fresh start to honest but unfortunate debtors to rebuild free from the burdens of preexisting debt while also

ensuring fair treatment of creditors and their claims. *Marrama*, 549 U.S. at 381. The protections afforded debtors pursuant to the Code come with obligations that the debtor is required to fulfill, particularly under 11 U.S.C. §§ 521, 1325 and Fed. R. Bankr. P. 4002.

The Debtor has filed ten petitions, nine of which have been filed in this district. Many of these cases are marred by his refusal to disclose complete financial information and cooperate with the Trustees, along with his unwillingness to pay his creditors. He has objected to claims without any legal basis and filed frivolous motions that exhausted the Court's resources. His conduct in the instant case towards the Trustee and Counsel for the WVSTD is particularly egregious—he repeatedly demeans both with unfounded accusations of conspiracy and especially continues to question the Trustee's fitness to serve in that role. Case No. 3:25-bk-00009, dkt. 279.

Not stopping with the parties appearing before the Court, the Debtor also goes as far as alleging that the Court is permitting criminal conduct. *Id*. The Debtor states:

> [A]ll I see is discrimination from the Trustee to the Court and now I am just going to walk away with my tail stuck up my you [know] what, what kind of justice system do [sic] have going on here. Here is yet another crime the Court will let happen[.]

*Id*. The Debtor's assertion that the Court is complicit in wrongdoing is a direct challenge to the Court's integrity, and an attempt to undermine the legitimacy of the bankruptcy system. The Court cannot allow this behavior to continue unchecked.

A. Cause exists to dismiss under 11 U.S.C. §§ 1307(c)(1) and (5)

As an initial matter, the Court finds that there is cause to dismiss under 11 U.S.C. § 1307(c)(1) because the Debtor's conduct caused unreasonable delay to his creditors. The Debtor's repeated statements leave little room for interpretation. His desire to avoid repaying his creditors is neither subtle nor sporadic. In multiple iterations of his Chapter 13 plan, there are several sections which state that none of the claims are to be paid. *See* Case No. 3:25-bk-00009,

23

dkts. 6, 36, 160. In his original plan in the instant case, the Debtor provides for zero plan payments to any creditor. *Id*. at dkt. 6. His First Amended Plan provides for $0.00 plan payments, despite the presence of six secured creditors, five of which are '910' claimholders. *Id*. at dkt. 36. Although each plan is difficult to decipher, it is clear that the overarching intent is to pay as little as possible to as few creditors as possible.

The Debtor's Second Amended Plan does not conform with the model Chapter 13 Plan set forth by this district, which further underscores the Debtor's unwillingness to adhere to established procedures to the detriment of his creditors. *See* N.D.W. Va. LBR 3015-1(a). Notably, the Debtor's prior plans were filed using the appropriate form, raising a legitimate question as to why the Second Amended Plan departed from that standard other than an attempt to delay or confuse creditors. Moreover, based on the Debtor's income, the Trustee recommends a plan that would pay unsecured creditors 100% of their claims. The Debtor instead proposes to pay only $3,000.00 per month to his creditors and believes that a 7-8% distribution to unsecured creditors is sufficient. *Id*. at dkt. 160. The Debtor also contends that he will not pay certain claims based on lien avoidance but makes no mention of 11 U.S.C. § 522(f), nor has he ever moved for such relief by separate motion (which is required in this District). Additionally, the Debtor purports in his plan to assume certain leases, but he provides simultaneously that "none of these 2 are to be paid," which violates 11 U.S.C. § 365. *Id*.

When the Trustee graciously drafted and presented to the Debtor a proposed Chapter 13 plan which would pay general unsecured creditors 100% of their claims, the Debtor refused to adopt that plan and stated that these general unsecured creditors should instead only realize a recovery of 7%-8%. *See* Tr. 12:12-18; Tr. 26:1-3. Because the Debtor rejected the Trustee's proposed plan and insists on filing his own plans riddled with vagaries and conclusory

24

statements refusing to pay creditors, the Trustee has been unable to even make adequate protection payments, and the administration of the estate has effectively come to a standstill. The Debtor has filed three unconfirmable plans over six months, unquestionably delaying recovery for his creditors. 8 COLLIER ON BANKRUPTCY ¶ 1307.04 [1] (16th ed. 2025); *Brown*, 671 B.R. at 470 (finding that the debtors' filing of five unconfirmable plans over eleven months constituted delay under 11 U.S.C. § 1307(c)(1)); *In re Paulson*, 524 F. App'x 306, 307 (8th Cir. 2013) (finding that the bankruptcy court did not abuse its discretion dismissing a Chapter 13 petition for filing five inadequate plans under §1307(c)(1)).

Furthermore, the Debtor failed to provide necessary financial statements to the Trustee. *See* Fed. R. Bankr. P. 4002(b)(2). He did not provide bank statements from his LLCs, thereby preventing the Trustee from accurately determining his disposable income and conducting the best interest of creditors test under 11 U.S.C. § 1325(a)(4). The Debtor provided an inaccurate Schedule A/B that failed to disclose ownership of certain LLCs, namely 24 Hour Roadside Service and Towing, LLC, and Darryl Palmer Trucking. Case No. 3:25-bk-00009, dkt. 1 at 32. The list of LLCs provided to the Court omits other LLCs listed in Schedule A/B. Case No. 3:25-bk-00009, dkt. 185. Debtor's assertion that he disclosed all of his LLCs on his schedules at the July 11 Hearing is false. Due to the omissions in the Debtor's list, the WVSTD was unable to determine what tax information the Debtor was required to provide. As a result, WVSTD expended additional resources to obtain that information and disclose it to the Court. That particular lack of transparency delayed WVSTD's recovery and hindered its ability to prepare an accurate estimate for its proof of claim. Given the Debtor's nine prior filings throughout the last thirty-three years which include cases in which he successfully confirmed a plan and obtained a discharge, he is well aware of what information must be included in the schedules, what a confirmable plan entails, and

his obligation to timely submit supporting financial documentation.  The Debtor's repeated failures
to fulfill his duties, despite having done so in prior cases, warrants an inference that this
noncompliance is not inadvertent, but instead a deliberate attempt to obfuscate.  *Wilcoxon*, 2018
Bankr. LEXIS 3616, at *7 (citing *Nelkovski*, 46 B.R. at 544).  Due to Debtor's obstinate refusal to
provide financial documentation in combination with a larger pattern, and based on the foregoing
discussions, the Court finds that there is unreasonable delay to creditors in the administration of
his case that is prejudicial pursuant to 11 U.S.C. § 1307(c)(1).  *Burgos*, 476 B.R. at 111 ("Courts
have found unreasonable delay where a debtor failed to . . . disclose ownership of assets on
schedules[.]").

       The Court further finds that there is sufficient cause to dismiss the case under 11
U.S.C. § 1307(c)(5).  The Court is cognizant that the Debtor is appearing *pro se*.  While courts
afford *pro se* litigants some leniency and liberally construe their pleadings, such leniency does not
relieve them of the obligation to comply with the relevant rules of procedure or substantive law.
*See In re Loy*, Nos. 07-51040-FJS, 09-51379-FJS, 2011 Bankr. LEXIS 2560, at *13 (Bankr. E.D.
Va. June 30, 2011) ("While it is axiomatic that leniency is afforded to *pro se* debtors and that *pro
se* pleadings are to be construed liberally by the courts, the grant of leniency is not without its
limitations."); *see also Ard v. Zold (In re Ard)*, 668 B.R. 395¸ 401 (Bankr. D.S.C. 2025).  This
Court cannot allow *pro se* debtors unlimited opportunities to submit unconfirmable plans,
especially where the debtor possesses a reasonable amount of legal sophistication and has
successfully confirmed a plan in the past.  *See In re Meltzer*, 534 B.R. 757, 771 (Bankr. N.D. Ill.
2015) ("No leniency should be given to 'frequent and experienced pro se litigants who have a
reasonable degree of legal sophistication[.]'").  Here, the Debtor filed three plans, all of which
were woefully deficient and patently unconfirmable.  Case No. 3:25-bk-00009, dkts. 6, 36, 160.

26

When presented with a fourth plan drafted by the Chapter 13 Trustee, the Debtor refused to acquiesce to the proposed plan terms.  Therefore, the Court finds that there is cause to dismiss under 11 U.S.C. § 1307(c)(5) for the failure to confirm a Chapter 13 plan.

B.   Cause exists to dismiss the case for bad faith under 11 U.S.C. § 1307(c)

The Debtor's conduct in this case and his prior cases reflects a troubling pattern of willful abuse of the bankruptcy system.  As the Court will set forth below using the *Love* factors, the Debtor has persistently engaged in tactics designed not to participate in a legitimate reorganization, but rather to obstruct, delay, and frustrate his creditors.

The first factor that the courts consider is the timing of the petition.  When the Debtor filed the petition on January 10, 2025, he had just recently purchased five vehicles, four of which were new.  Three of those five vehicles were purchased within a year of the petition date.  Case No. 3:25-bk-00009, dkt. 1 at 55-59.  While "not conclusive evidence of bad faith by itself, a debtor's purchase of a vehicle followed immediately by a bankruptcy filing can be evidence of bad faith."  *In re Melton*, No. C/A 10-05297-DD, 2010 WL 5128631, at *4 (Bankr. D.S.C. Dec. 9, 2010) (debtor's purchase of a vehicle a month prior to the petition date was considered in the bad faith analysis); *In re O'Brien*, 373 B.R. 503, 507 (Bankr. N.D. Ohio 2007) (finding the debtors' purchase of a vehicle within three months preceding the petition date indicated bad faith).  In the instant case, the Debtor purchased two new vehicles (a 2025 Honda CR-V and a 2025 Honda Odyssey) approximately six months prior to the petition date.  Importantly, the Debtor stated that he maintains a household of one in his schedules.  Thus, the Court cannot fathom or understand the necessity of purchasing five vehicles in such a short time period before filing a bankruptcy petition.  The Debtor was not able to explain why he needed two brand new personal vehicles.  And although he claimed that several of the newly-purchased vehicles were for his businesses,

27

there is no way to confirm that information or to evaluate the reasonableness of those purchases due to the dearth of information and financial documentation related to the Debtor's businesses. On the most basic level, the Court sees the purchase of five vehicles prior to the filing, two of which were obtained within six months of the petition date. This reeks of bad faith.

The next two factors are: (1) how the debt arose, and, (2) the debtor's motive in filing the petition. In this case, the majority of the secured claims stem from the five '910' claimholders.[5] The Debtor in his original and First Amended Plan stated that he would not pay these secured creditors. Although the Debtor added these claims to his Second Amended Plan, the Court can reasonably conclude that when he filed his petition, the Debtor did not intend to make any payments on these claims. To further support this inference, the Debtor indicates on Schedule C that he was exempting the full value of the vehicles and his real property without any legal support.[6] It is apparent that the Debtor has no genuine interest in reorganizing under the Bankruptcy Code, which requires an effort to pay creditors as much as possible through either liquidation or a plan. Rather, this filing is yet another of the Debtor's attempts to prevent creditors from receiving any sort of meaningful recovery (or no recovery at all). Therefore, these factors weigh strongly in favor of finding bad faith.

---

[5] This was calculated from the proofs of claim filed. A total of $177,343.70 is attributed to the '910' claimholders. The total claims that are listed as secured is $232,364.22, which means that around 76% of the secured debt was incurred from vehicle purchases.

[6] On Schedule C, the Debtor claims a total of $286,940.00 in exemptions for his real property and five vehicles citing to 11 U.S.C. § 522(b)(3). West Virginia has opted out of the federal bankruptcy exemption scheme under 11 U.S.C. § 522(d), thus debtors are limited to the exemptions provided under W. Va. Code § 38-10-4. *See Tulloh v. Tulloh (In re Tulloh)*, No. 3:20-bk-30063, 2021 Bankr. LEXIS 1687, at *4, 2021 WL 2582795, at *2 (Bankr. S.D. W. Va. June 21, 2021). There are no citations to the West Virginia Code, and the exemptions claimed are indecipherable. The Debtor exceeds the $35,000.00 limit in real property by $36,940.00. *See* W. Va. Code § 38-10-4(a). He claims an exemption in several motor vehicles for a total of $165,000.00 which far exceeds the $7,500.00 limit in one motor vehicle and his wildcard exemption. *See* W.Va. Code §§ 38-10-4(b), (e).

Next, the Court will consider the nature of the debt.  This involves an inquiry into whether the debt would be deemed nondischargeable as well as an examination into two of the *Deans* factors regarding the percentage of repayment proposed to unsecured creditors and the debtor's financial situation.  *Deans*, 692 F.2d at 972.  The majority of the secured debt is held by the '910' claimholders, and those debts generally do not automatically fall under the categories for nondischargeability under 11 U.S.C. § 523.[7]  Thus, this particular factor weighs towards the case being filed in good faith.

With regards to the *Deans* factors, the proposed percentage of repayment cannot be accurately calculated from any of the plans filed by the Debtor.  He stated, without explanation, that he felt a 7-8% percentage payout for general unsecured creditors was appropriate, despite the potential of paying a 100% plan.  *See* Tr. 12:12-18; Tr. 26:1-3.  In discussing his financial situation, Debtor stated that he began experiencing financial difficulties approximately a month prior to filing.  Tr. 23:7-11.  His schedules, however, indicate that his gross income from business operations totaled $406,334.00 from January 1, 2025 until the date he filed bankruptcy.  Case No. 3:25-bk-00009, dkt. 1 at 10.  When the Trustee examined the Debtor's 2023 tax returns, he confirmed that the Debtor's businesses have earned around $406,000.00 that year, which divides out to roughly $38,000.00 per month instead of the $25,000.00 disclosed on Schedule I.  *See* Tr. 28:1-8.  This discrepancy raises a question of whether the Debtor was truly facing financial difficulties that warranted bankruptcy relief or whether the Debtor was attempting to use the bankruptcy process to simply avoid paying his creditors.  Therefore, the Court finds that the Debtor's proposal for a low percentage of repayment to unsecured creditors along with the

---

[7] No nondischargeability complaints were filed against the Debtor during the pendency of the instant case.  The Court is not making a determination on the nondischargeability of these claims.

inconsistencies in his reported income and his financial situation lend credence to the assertion that the Debtor is acting in bad faith.

The Court will now turn to the question of whether the Debtor has been forthcoming with this Court and his creditors and will also evaluate the *Deans* factor regarding any unusual or exceptional problems facing a particular debtor. Bluntly put, the Debtor has not been forthcoming. He refused to produce bank statements from at least one of his entities, Tire Shop and More, LLC, despite the Trustee's requests. *See* Tr. 37:5-8. The Trustee asked for those statements so that he could accurately assess the Debtor's disposable income and propose a Chapter 13 Plan that would conform to the requirements of the Bankruptcy Code. Importantly, providing the Trustee with information necessary to administer the estate is an enumerated duty of the Debtor pursuant to Fed. R. Bankr. P. 4002(b).

Even worse than withholding information, the Debtor has provided misleading information during the pendency of his case. The Court explicitly ordered the Debtor to submit a list of *all* his business entities. However, when the Debtor filed that list on the docket, he omitted the following companies: Fix-It Anytime, LLC, Matt's Auto World, and Palmer Land Development. Case No. 3:25-bk-00009, dkts. 185, 230. The Debtor maintained at the July 11 Hearing that he did fully disclose his businesses on Schedule A/B, but Schedule A/B does not include his interests in two additional companies: 24 Hour Roadside Service and Towing, LLC and Darryl Palmer Trucking. This inconsistent reporting created significant confusion regarding his tax liabilities and forced the WVSTD to expend additional resources to uncover the discrepancies and disclose them to the Court. *See* Case No. 3:25-bk-00009, dkt. 204.

Aside from his business interests, the Debtor was not forthcoming about his disposable income. The Debtor proposed to make monthly payments of $3,000.00 for 60 months,

30

which multiplies out to a proposed total distribution of $180,000.00 in the Second Amended Plan. However, the monthly net income calculation on Schedule I indicates that $20,875.35 can be committed to the plan monthly. Thus, the Debtor's proposed plan falls woefully short of the amount he could commit to the plan and can hardly be considered a good faith effort at repaying his debts. Accordingly, the Court finds that this factor weighs in favor of dismissing the case for bad faith.

Concerningly, the Debtor's conduct during the pendency of this case presents some unique problems for the Court, the Trustee, and creditors. The Debtor has mentioned on several occasions that he believes there to be a conspiracy perpetrated against him by the WVSTD and the Trustee. He argues, in this case, that the "State and the trustees gang up against me," and that this same corruption with the WVSTD and Trustee was present in his previous cases. Case No. 3:25-bk-00009, dkt. 266. He states, unartfully, that the Trustee and WVSTD want to "gang bang me by filing [a] Joint Motion to dismiss my case." *Id*. While these allegations are unfounded and incendiary, they are also illuminating and provide some insight into the Debtor's underlying animosity towards his creditors and deep suspicion of the bankruptcy process as a whole. Despite the Trustee's continued efforts to assist him in navigating this case, the Debtor maintains an adversarial posture which renders meaningful collaboration and the orderly administration of the estate impossible. Therefore, the Court finds that this recalcitrant attitude not only delays the progress of the case but also frustrates the ability of creditors to obtain any recovery. This factor strongly supports a finding of bad faith.

Finally, the Court will take up the last two factors together: the Debtor's treatment of creditors before and after the petition was filed and how the Debtor's actions have affected his creditors. To describe the Debtor as a prolific filer in this district is an understatement. His

31

repeated filings, often dismissed for noncompliance with the Bankruptcy Code and the terms of his plans, reflect a sustained pattern of abuse. This is not an honest but unfortunate debtor asking for a clean slate after he pays creditors to the best of his ability. The Debtor has taken several bites of the apple. At this point, the apple has been consumed, the core discarded, and, yet, he has returned for his tenth case. The fact that there are ten filings, alone, is enough to be "a badge of bad faith." *Casse*, 198 F.3d at 332.

After diving deeply into the details of all the Debtor's cases, the Court has observed a calculated strategy of repeated abuse under the guise of seeking reorganization. The Debtor's usual scheme proceeds as follows. First, he files a petition that has an incomplete or misleading statement of his income. *See* Case No. 3:14-bk-01019, dkt. 59; Case No. 3:16-bk-00077, dkt. 211; Tr. 28:1-8. Usually, the Debtor's income is understated compared to what his tax returns show, whether it is a 1099 form in 2005 that indicates the Debtor received $500,000.00, a 2015 tax return reflecting that two of his entities received $109,044.00 and $113,538.00 respectively, or a 2023 tax return showing business income of $406,000.00. Case No. 3:09-bk-01476, dkt. 114; Case No. 3:16-bk-00077, dkt. 211; Tr. 28:1-8. Then, the Debtor proposes a plan that is either indecipherable, incomplete, or provides for no payments to secured creditors. *See* Case No. 3:17-bk-00006, dkt. 14; Case No. 3:16-bk-00077, dkt. 39; Case No. 3:25-bk-00009, dkts. 6, 36, 160. After that, the Debtor refuses to provide financial documentation to the Trustee regarding his businesses, thereby preventing the Trustee from assessing his income. Case No. 3:16-bk-00077, dkt. 39; Case No. 3:17-bk-00006, dkt. 125; Case No. 3:25-bk-00009, dkt. 200. Thereafter, the Debtor attempts to extend the protections afforded to him personally under the Bankruptcy Code to his nondebtor businesses. This includes filing motions to add his entity, Matt's Auto World, to his personal bankruptcy filing, submitting notices of automatic stay violations when the creditor is exercising

32

their rights against property of a nondebtor entity, and impermissibly claiming exemptions on behalf of one of his entities in his personal bankruptcy cases. *See* Case No. 3:14-bk-01019, dkt. 30; Case No. 3:17-bk-00006, dkt. 91; Case No. 3:25-bk-00009, dkt. 37. That leads to the fifth step: the Debtor will file a litany of claim objections and motions that are unfounded and state no basis for relief under the Bankruptcy Code. In the instant case, the Debtor filed ten claim objections that were all summarily denied by the Court. As another example, in his eighth filing, the Debtor submitted eight claim objections, only one of which was sustained. Case No. 3:16-bk-00077, dkts. 108, 109, 123, 201, 220, 223, 224, 228. Following that step, the Debtor baselessly accuses the other parties and the Trustee of being part of a conspiracy or ambush to justify why the case is not on track. *See* Case No. 3:09-bk-01476, dkt. 138; Case No. 3:16-bk-00077, dkt. 255; Case No. 3:25-bk-00009, dkt. 266. Predictably, no evidence has been presented to the Court supporting the existence of said conspiracy. Finally, the case will either be dismissed due to the Debtor's failure to make plan payments, other deficiencies under 11 U.S.C. § 521 and Fed. R. Bankr. P. 4002, or the Debtor will voluntarily dismiss the case. Unsurprisingly, the current case follows this exact vexatious cycle. This repeated conduct constitutes a deliberate attempt to abuse the bankruptcy process. *Wilcoxon*, 2018 Bankr. LEXIS 3616, at *7.

Accordingly, this Court finds that there is substantial cause to dismiss the case with prejudice under 11 U.S.C. § 349(a). If ever there were a quintessential case warranting a bar to refiling under § 349(a), this is it.

## IV.

For the reasons set forth herein, the Court finds that the Debtor has caused unreasonable delay which prejudiced his creditors, has failed to file a confirmable plan, and has acted in bad faith. The purpose of the Bankruptcy Code is to provide a fresh start to an honest but

unfortunate debtor. *Marrama*, 549 U.S. at 373-74. However, where a debtor engages in dishonesty, concealment, and harassment, those protections are rightfully forfeited. Here, the Debtor demonstrates a troubling pattern of filing bankruptcy cases, submitting frivolous motions, obfuscating the most basic and necessary information in his cases, and then subsequently abandoning those actions by either voluntarily dismissing his cases or failing to carry out his duties as a debtor. Furthermore, he repeatedly besmirches the integrity of public officials, counsel, creditors, the Trustee, and the Court. He depicts himself as a victim of numerous conspiracies orchestrated by the Trustee and WVSTD and exclaims that he is being ambushed. The only victim here is the bankruptcy process itself.

Moreover, the only "conspiracy" evident from this extensive record is the Debtor's own deliberate and calculated manipulation of the bankruptcy process—whether to evade state court litigation against his business entities in previous cases or, in this instance, to prevent his creditors from receiving any recovery for their claims and holding them hostage in the judicial system. He weaponizes his *pro se* status as a shield against accountability, all while audaciously flouting the Bankruptcy Code, the Trustee's requests, and this Court's orders. His *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Hous., N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). The Debtor shows no remorse for his conduct in this case or previous filings; more so, he consistently deflects blame onto the opposing parties, the Trustee, and the Court. Concerningly, his actions demonstrate animus for this Court's authority and an unwillingness to pay any of his creditors. Allowing the Debtor to persist in this manipulative manner would be a direct affront to the bankruptcy system. Therefore, the Court finds that there is sufficient cause to dismiss the case with prejudice, and to bar the

Debtor from refiling for five years to preserve the integrity of the bankruptcy system and to protect creditors from further prejudice.

Accordingly, it is hereby **ORDERED** that:

1.    The Motion is **GRANTED**.

2.    The case is hereby **DISMISSED**.

3.    The Debtor is barred from filing any case under any chapter of the Bankruptcy Code for a period of five years in this jurisdiction effective immediately.

4.    The Clerk's Office is directed to serve this Order to the Office of the United States Attorney for the Northern District of West Virginia.

**It is so ORDERED.**